IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

ABDUL KHALEQUE, ZAKIR HOSSAIN,

                Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,
et al.,

                Respondents.

**REPORT AND
RECOMMENDATION**

08-CV-00477(S)(M)

---

       Petitioner filed a petition under 28 U.S.C. §2241 *et. seq.*, seeking a writ of habeas

corpus ordering his release from the custody of the Department of Homeland Security, United

States Immigration and Customs Enforcement ("DHS") on June 27, 2008 (Dkt. #1).  On

October 22, 2008, Hon. William M. Skretny referred the case to me pursuant to 28 U.S.C.

§636(b) for all proceedings necessary to determine the factual and legal issues presented, and for

preparation of a Report and Recommendation (Dkt. #12).  For the following reasons, I

recommend that the petition be DENIED.


                                **BACKGROUND**

       Petitioner is a native and citizen of Bangladesh (Dkt. #9-2, Declaration of George

Scott, ¶5).  He entered the United States on August 29, 2001 using false documents.  On

September 12, 2001, he pled guilty to making a false representation of a material fact to a United

States Immigration and Customs Enforcement officer in violation of 8 U.S.C. §1324(a)(3) and

was sentenced to time served  (Id. at ¶¶5, 6).  Petitioner was returned to Canada on September

13, 2001, after he expressed a credible fear of removal (Id. at ¶7).  However he failed to appear for an asylum hearing and his case was closed (Id.).

On October 9, 2006, petitioner was arrested after attempting to illegally enter the United States (Id. at ¶9).  He pled guilty to violating 8 U.S.C. §1325(a)(1), improper entry by an alien, and was sentenced on December 22, 2006 to time served (Id. at ¶11).  Upon his release from custody of the United States Marshals Service, petitioner was received into DHS custody on December 28, 2006 (Id. at ¶12).

On March 30, 2007, petitioner was ordered removed from the United States by Immigration Judge John B. Reid (Dkt. #9-3, Declaration of George F. Scott, Ex. A, p. 17).  Petitioner's appeal from Judge Reid's decision was denied by the Board of Immigration Appeals ("BIA") on July 27, 2007 (Dkt. #9-2, Declaration of George F. Scott, ¶14).

On August 10, 2007, DHS requested the Consulate of Bangladesh to issue a travel document for petitioner (Dkt. #9-3, Declaration of George F. Scott, Ex. A, p. 8).  However, on August 15, 2007, petitioner filed a petition with the Second Circuit Court of Appeals for review of the order of removal and moved for a stay (Dkt. #9-2, Declaration of George F. Scott, ¶14).

On August 27, 2007, petitioner was interviewed by a representative of the Consulate (Id. at ¶17).  When petitioner advised the representative of his pending petition for review and stay of removal, the representative terminated the interview until all appeals were exhausted (Id.).

By order entered  February 8, 2008, the Second Circuit denied petitioner's motion for a stay and dismissed his petition for review (Id. at ¶19).  Consequently, on March 17, 2008, DHS requested that the Consulate issue a travel document (Dkt. #9-3, Declaration of George F.

Scott, Ex. A, p. 7).  This order was issued as a mandate to DHS on April 10, 2008 (Dkt. #9-3, Declaration of George F. Scott, Ex. A, p. 31).  Petitioner was interviewed telephonically by the Consulate on March 27, 2008 (Dkt. #9-2, Declaration of George F. Scott, ¶21).

On April 10, 2008, DHS served petitioner with a "Warning for Failure to Depart", which advised him that his failure to comply with his obligation to assist in obtaining a travel document could result in the extension of his removal period (Dkt. #9-3, Declaration of George F. Scott, Ex. A, pp. 4-6).  Based upon petitioner's May 15, 2008 custody status review, he was advised that he would not be released from custody at that time because he had "failed to demonstrate that there was no significant likelihood of [his] repatriation in the reasonably foreseeable future" (Id. at p. 2).

From April 2008 through June 27, 2008, DHS contacted the Consulate who advised that the request for travel documents was still pending (Dkt. #9-3, Declaration of George F. Scott, Ex. A, p. 11).  On May 15, 2008 and July 16, 2008, DHS also requested assistance from DHS Headquarters Travel Document Union (Id. at pp. 9-11).

### DISCUSSION AND ANALYSIS

Once an order of removal against an alien becomes final, the Attorney General is generally required to remove the alien from the United States within 90 days.  See 8 U.S.C. §1231(a)(1)(A).  However, "the removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8

-3-

U.S.C. §1231(a)(1)(C). "In considering whether aliens have satisfied their obligations under §1231(a)(1)(C), courts look to whether they have undertaken overt actions to thwart removal, whether they can or have produced affidavits from friends and family to support their claims of nationality, whether they have requested travel documents from the country of intended removal, whether they have attempted to contact the country of intended removal's consulate, and/or whether they can or have provided the INS with requested documents." Hydara v. Gonzales, 2007 WL 2409664, *2-3 (D. Minn. 2007).

If the removal period has not been extended, 8 U.S.C. §1231(a)(6) governs post-removal detentions. See Liu v. Chertoff, 2006 WL 4511941, *3 (W.D. Tex. 2006). Section 1231(a)(6) "provides that certain classes of aliens . . . shall continue to be subject to 'supervision' even after the 90 day period expires if they have not yet been removed." Kassama v. Department of Homeland Security, 553 F. Supp. 2d 301, 305 (W.D.N.Y. 2008) (Siragusa, J.). Although Section 1231(a)(6) does not set a limit on the length of detention beyond the removal period, the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001), has held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." 533 U.S. at 699. Under Zadvydas, the first six months of detention beyond the removal period are presumptively permissible. Id. at 701. Once the six-month period has passed, the burden is on the alien to "provide[ ] good reason to believe that there is no significant likelihood

of removal in the reasonably foreseeable future . . . ." <u>Id</u>.  Only then does the burden shift to the

government, which "must respond with evidence sufficient to rebut that showing." <u>Id</u>.[1]

"On one hand, to meet his burden the alien is not required 'to show the absence of

*any* prospect of removal - no matter how unlikely or unforeseeable.'  On the other hand, the alien

does not prevail merely be [*sic*] demonstrating the absence of a repatriation agreement between

the U.S. and his home country." <u>Kassama</u>, <u>supra</u>, 553 F. Supp. 2d at 305 (emphasis in original).

Petitioner argues that there is no significant likelihood of his removal in the

foreseeable future and that his detention is therefore improper under <u>Zadvydas</u>, <u>supra</u>, 533 U.S. at

701.  Respondent counters that petitioner's continued detention is permissible because it was his

own conduct in seeking a stay of removal and failure to cooperate that has delayed his removal

(Dkt. #10, Respondent's Memorandum of Law, pp. 9-13).  Respondent also argues that petitioner

has failed to offer any evidence to meet his burden to demonstrate that there is no significant

likelihood of removal in the reasonably foreseeable future (<u>Id</u>. at pp. 13-15).

I find that petitioner has failed to meet his initial burden under <u>Zadvydas</u>.  Had he

been granted a stay by the Second Circuit, the removal period would have been tolled statutorily.

<u>See</u> 8 U.S.C. § 1231(a)(1)(B)(ii) ("If the removal order is judicially reviewed *and if a court*

*orders a stay* of the removal of the alien, [the removal period begins on] the date of the court's

final order." (emphasis added)).   Although there was no formal stay, the removal period is also

extended "if the alien fails or refuses to make timely application in good faith for travel or other

---

[1]        If the six-months has passed and removal is not reasonably foreseeable, "the alien's
release may and should be conditioned on any of the various forms of supervised release that are
appropriate in the circumstances." <u>Zadvydas</u>, <u>supra</u>, 533 U.S. at 700 (citing 8 U.S.C. §§1231(a)(3), 1253;
8 C.F.R. §241.5).

documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §1231(a)(1)(C).   In this case, petitioner elected to file a petition for review and a motion for a stay of removal.  Therefore, the Consulate terminated the removal process until all of petitioner's appeals were exhausted (Dkt. #9-2, Declaration of George F. Scott, ¶17). According to DHS, it also has an informal agreement with the Second Circuit that it will not remove aliens who have sought a stay of removal with their petitions for review (Id. at ¶16). Thus, the petition for review and motion for a stay of removal acted to prevent his removal until the Second Circuit issued its mandate[2] denying the petition and stay on April 10, 2008. See Okwilagwe v. Immigration and Naturalization Service, 2002 WL 356758, *3 (N.D.Tex. 2002) (finding that the 90-day removal period began when the Fifth Circuit dismissed a petition for review).

Accordingly, in this case, the removal period began on April 10, 2008, when the Second Circuit issued its mandate denying his petition for review and motion for a stay, and ended on July 9, 2008.  The "presumptively reasonable" period of detention of six months from the end of the removal period (Zadvydas, supra), will elapse in January 2009.

Even if I were to assume that the six month period had passed, petitioner has not met his burden of establishing that there is no significant likelihood of removal in the reasonably foreseeable future. The only evidence he relies upon is the fact that the Consulate has not "responded positively to their request for a travel document" and that DHS has made no attempts

---

[2]      "Control over an appellate judgment continues until the court mandate issues; a district court order, though vacated on appeal, remains in effect until the issuance of an appellate court mandate, pursuant to FRAP 41." 2A Fed. Proc., L. Ed. § 3:1013.

to secure the travel documents since June 27, 2008 (Dkt. #11, Petitioner's Response, p. 9).  The

evidence does not establish that there is no significant likelihood of removal in the reasonably

foreseeable future.  The request for travel documents is pending, and, to date, the Consulate has

given no indication that travel documents will not be issued.  See Kassama, supra, 553 F.

Supp.2d at 307 (denying petition for a writ of habeas corpus where "1) Petitioner has been in

custody awaiting deportation for approximately 21 months; 2) during that time ICE has contacted

the Gambian Embassy numerous times to request the issuance of travel documents for Petitioner;

and 3) the Gambian Embassy has indicated that it is investigating the request.").

      The cases upon which petitioner relies (Dkt. #11, Petitioner's Response, pp. 8-9)

are also readily distinguishable.  See Habtegaber v. Jenifer, 256 F. Supp. 2d 692, 697-698

(E.D.Mich. 2003) (granting petition where the petitioner was advised by the consulate that his

request for travel documents would be denied and the respondent had requested the court to grant

it additional time to "negotiate" with Ethiopia for his return); Okwilagwe, supra, 2002 WL

356758, at *3 (granting petition where the petitioner questioned whether he could be removed

because of his current medical condition and neither the court nor the parties could obtain a

response from the Nigeria Consulate about his removal); Lewis v. Immigration and

Naturalization Service, 2002 WL 1150158, *4-5 (E.D.N.Y. 2002) (giving the respondent 30 days

to rebut the petitioner's showing that his removal was not reasonably forseeable, which included

a worksheet completed by INS officials indicating that travel documents were unlikely to be

issued and recommending release); Shefqet v. Ashcroft, 2003 WL 1964290, *4 (N.D. Ill. 2003)

(denying petition where the embassy indicated that it would not issue a travel document).

" 'For detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink.' " <u>Kassama</u>, <u>supra</u>, 553 F. Supp. 2d at 307 n. 4. However, " 'that period is shrinking here.' " <u>Id</u>. Therefore, if it subsequently appears that petitioner's removal is not reasonably foreseeable because of his continued detention or for any other reason, he may file another petition. <u>See</u> <u>id</u>.

## CONCLUSION

For these reasons, I recommend that the petition be DENIED and this action be dismissed, without prejudice to petitioner's right to file another petition if it subsequently appears that petitioner's removal is no longer reasonably foreseeable. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. <u>See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.</u>, 840 F. 2d 985 (1st Cir. 1988).

-8-

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:        December 5, 2008

JEREMIAH J. MCCARTHY
United States Magistrate Judge